# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL ADAM CHAVERST, JR.,    } | |
| } | |
| Plaintiff,    } | |
| } | |
| v.    } | Case No.: 2:11-CV-2785-RDP |
| } | |
| MICHAEL J. ASTRUE,    } | |
| COMMISSIONER OF SOCIAL    } | |
| SECURITY,    } | |
| } | |
| Defendant.    } | |

## MEMORANDUM OF DECISION

Plaintiff Samuel Adam Chaverst, Jr. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the decision by the Commissioner of the Social Security Administration denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Based upon this court's review of the record and the briefs submitted by the parties, the court finds that the final decision of the Commissioner is due to be affirmed.

**I.    Proceedings Below**

Plaintiff filed his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on September 15, 2006. (Tr. 99). Plaintiff alleged a disability onset date of September 14, 2006, after a motorcycle accident led to the amputation of his dominant right arm. (Tr. 102). Plaintiff's application was initially denied by the Social Security Administration on November 17, 2006. (Tr. 99-107). Plaintiff then requested and received a hearing before Administrative Law Judge ("ALJ") L. K. Cooper, Jr. on November 19, 2008. (Tr. 31). In his April 9, 2009 decision, the ALJ determined Plaintiff was not disabled within the

meaning of the Social Security Act and thus not eligible for DIB or SSI benefits. (Tr. 30.). After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. (Tr. 9). Therefore, it is a proper subject of this court's appellate review. 42 U.S.C. §§ 405(g), 1383(c).

Plaintiff was 30 years old at the time of the hearing. (Tr. 33, 99). He did not complete his high school education, and he was diagnosed with learning disabilities while in school. (Tr. 48-49, 180-90). Plaintiff previously worked in a variety of areas. His last work was medium, unskilled work in maintenance and housekeeping. (Tr. 34, 157). He had other heavy, unskilled work in shipping and receiving as a loader. (*Id.*). Plaintiff had also performed light to medium, unskilled work in car detailing and as a busser at a country club. (*Id.*).

On September 14, 2006, Plaintiff's motorcycle collided with a truck at a high speed. (Tr. 196). He was thrown 65 to 80 feet. (*Id.*). His injuries were severe and he was brought to UAB hospital on a trauma alert. (*Id.*). Plaintiff was diagnosed and treated for bilateral pulmonary contusions and wounds, an axillary hematoma with a subclavian artery occlusion, a right midshaft humeral fracture, and facial lacerations. (*Id.*). During the course of surgery on his arm at UAB, his surgeons, Dr. Volgas and Dr. Melton, determined Plaintiff's right arm to be unsalvageable and the limb was amputated. (Tr. 199). Following surgery, Plaintiff progressed well and was discharged from UAB on September 23, 2006. (Tr. 196-97).

Plaintiff was seen for follow up appointments at UAB on October 4 and 5, 2006. At his October 4 appointment, Plaintiff claimed to be doing well except for an inability to sleep at night. (Tr. 211). At his October 5 appointment, Plaintiff endorsed a pain level of 7 out of 10 and was prescribed Lortab. (Tr. 215). On Oct. 30, 2006, Plaintiff was seen by his surgeon, Dr. Volgas, for another follow up appointment. (Tr. 228). Dr. Volgas reported Plaintiff was "in

good spirits and . . . doing well in terms of his psychiatric adjustment." (Tr. 228). He noted Plaintiff had "some phantom sensation and some phantom pain" and prescribed Lyrica for pain. (*Id.*). Plaintiff returned to see Dr. Volgas on January 2, 2007. (Tr. 227). Plaintiff reported little progress in terms of pain relief and that he had quit taking the Lyrica. (*Id.*). Because Plaintiff's wounds were healed, Dr. Volgas reported there was little more he could do for Plaintiff and suggested Plaintiff follow up at the pain clinic at Cooper Green Mercy Hospital. (*Id.*).

On March 5, 2007, Plaintiff was seen at Cooper Green and endorsed a pain level of 10 out of 10. (Tr. 234). Plaintiff indicated Tramdol was his sole medication, and he was prescribed additional medications for pain. (Tr. 234-35). The specific prescriptions are illegible. (Tr. 235). Later that month, Plaintiff was seen by a pain specialist, Dr. James Beretta; however, the notes from this visit are also largely illegible. (Tr. 225). On July 30, 2007, Plaintiff was seen by Dr. Mark Wilson at the Cooper Green pain clinic. (Tr. 233). During this appointment, Plaintiff reported no marijuana use since his accident. (*Id.*) Plaintiff again endorsed a pain level of 10 out of 10; however, Dr. Wilson noted Plaintiff was smiling and in no distress. (*Id.*). Additionally, Dr. Wilson noted that a bottle of Gabapentin prescribed to Plaintiff for pain was still full and Plaintiff's one month supply of Tramdol was never refilled. (*Id.*). Plaintiff cited difficulty swallowing the Gabapentin as his reason for not taking the medication. (*Id.*). Dr. Wilson prescribed new medication, Elavil, for Plaintiff's pain. (*Id.*)

Dr. Wilson's notes from the July 30 appointment also indicate he ordered a knee x-ray for Plaintiff because Plaintiff complained of knee pain. (Tr. 233). However, Dr. Wilson's notes from Plaintiff's next visit on October 5, 2007 indicate Plaintiff failed to show up for the x-ray appointment. (Tr. 232). At the hearing, Plaintiff testified that he did in fact show up for the x-ray but there was no sitting room available in the facility, prompting him to leave. (Tr. 47-48).

3

In any case, according to Dr. Wilson's October 5, 2007 notes, Plaintiff indicated that his knee no longer hurt him. (*Id*.).

At the October 5, 2007 appointment, Plaintiff admitted smoking marijuana within the last week. (Tr. 232). Plaintiff endorsed a pain level of 9 out of 10; however, he reported only taking the Elavil prescribed on his last visit occasionally, instead of regularly at bedtime as directed. (*Id.*). Dr. Wilson again counseled Plaintiff on properly taking medication and prescribed another medication, Doxepin, for his pain. (*Id.*).

On October 29, 2007, Plaintiff reported to vocational rehabilitation services ("VRS") at Workshops, Inc. in Birmingham, Alabama for job training. (R. 246). VRS records indicate that Plaintiff reported he was taking no prescription medications and was in general good health. (*Id*). A VRS progress report dated January 7, 2008, noted Plaintiff was "a reliable worker," "doing well in class," and "job ready." (Tr. 241). On February 7, 2008, VRS terminated Plaintiff from the program indicating he was "ready for competitive employment." (Tr. 243). His final report stated "his rate of production was good especially for someone who has only one arm." (Tr. 244). At the hearing, however, Plaintiff testified he required many breaks to complete his work at VRS. (Tr. 46). He also testified that while at VRS his pain was severe enough to make him want to lie down, but that he was not able to. (Tr. 75). He further testified that he had to take time off from his work at VRS due to his pain. (Tr. 63). However, when asked how much time he was required to take off, Plaintiff indicated only one or two days. (*Id.*). In fact, attendance and productivity were cited as some of Plaintiff's strengths by VRS. (Tr. 244).

On March 27, 2008, Plaintiff returned for a follow up appointment with Dr. Wilson at the pain clinic and reported a pain level of 0 out of 10. (R. 231). He reported he was not taking any

4

prescription medications and that he was "coping and doing great." (*Id*.) Dr. Wilson's notes indicate he discharged Plaintiff from the pain clinic following this visit. (*Id.*). However, Plaintiff testified at the hearing that if he told Dr. Wilson he was doing great, he meant doing great on that specific day of the appointment and not overall. (Tr. 55-57). When asked at the hearing why he reported he was taking no medications to Dr. Wilson, Plaintiff testified (without specificity) that some of his medication put him in greater pain. (Tr. 52). Additionally, he stated he could not afford one of his medications, Lyrica. (*Id.*).

At the hearing, Plaintiff also testified he returned to work for a previous employer, Cash Molding, in March 2008, working one day per week. (Tr. 38). He stated his work was janitorial in nature and that he had trouble completing this work because of his pain and injury. (Tr. 39-40). Plaintiff indicated he was laid off from this employment in June 2008. (Tr. 37, 50). Regarding his pain, Plaintiff characterized it as a constant, all day pain. (Tr. 60). He testified that the pain was extreme enough to require him to "ball up" and stop whatever task he was doing on bad days. (Tr. 68). He testified that his pain had gotten worse in the last few months. (Tr. 74). He noted that in the three weeks before his hearing, his pain had required him to stay in bed three to four days per week. (Tr. 72). His girlfriend, Tanisha Michelle Maston, also testified at the hearing on his behalf. (Tr. 76-83). She indicated Plaintiff had difficulty with tasks such as cooking, washing himself, and dressing. (Tr. 80-81). However, Ms. Maston indicated Plaintiff could successfully perform other tasks such as driving a vehicle despite his pain. (Tr. 81). Plaintiff also indicated he was able to successfully text message and otherwise operate a cellular telephone. (Tr. 84).

5

## II.     The ALJ's Decision

The law and regulations governing claims for DIB and SSI are identical. Therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Claimants under DIB and SSI must prove "disability" within the meaning of the Act, which defines disability in virtually identical language for both programs. 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "Substantial gainful activity" is work that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572. A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits:

1. Is the person presently working?
2. Is the person's impairment(s) severe?
3. Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
4. Is the person unable to perform his or her former occupation?
5. Is the person unable to perform any other work within the national economy?

20 C.F.R. §§ 404.1520, 416.920. Before performing the fourth and fifth steps, the ALJ must determine the claimant's residual functional capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d

1232, 1238-39 (11th Cir. 2004). The RFC is the most the claimant is able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* at 1238. It can contain both exertional and nonexertional limitations. *Id.* at 1242-43.

The burden of proof rests squarely on a claimant through step four in the process. *Id.* at 1237-39. If a claimant meets his burden through step four, the burden shifts to the Commissioner at step five. *Id.* at 1241 n.10. If a claimant is unable to perform his previous work, the Commissioner must show there are a significant number of jobs in the national economy the claimant can perform. *Id.* at 1239. This determination is based on the claimant's RFC, age, education, and work experience. *Id.* The ALJ can either use the Medical Vocational Guidelines ("the Grids") or hear testimony from a vocational expert ("VE") in making this determination. *Id.* at 1239-40.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 14, 2006. (Tr. 24). Plaintiff met the insured status requirements of the Social Security Act through September 30, 2011. (*Id.*). The ALJ concluded Plaintiff had the severe impairment, as defined by the Social Security Act, of phantom limb pain associated with an upper extremity amputation. (*Id.*). At the hearing, Plaintiff also alleged knee problems contributing to his inability to work; however, the ALJ determined Plaintiff failed to produce evidence supporting that claim. (Tr. 25). The ALJ then determined that Plaintiff's above listed impairment did not meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). This was because the ALJ determined Plaintiff retained the ability to perform fine and gross movements effectively with his left extremity. (*Id.*).

Before proceeding to steps four and five, the ALJ determined Plaintiff had the RFC to "perform simple light work, as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b), that would

7

not be precluded by the loss of the dominant upper extremity." (Tr. 25).  The ALJ determined that Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged phantom limb pain; however, the ALJ concluded Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's stated RFC assessment. (Tr. 26).  In support of this finding, the ALJ cited Plaintiff's noncompliance in properly taking prescription medication. (*Id.*).  He noted inconsistences in Plaintiff's allegations.  (*Id.*).   He also cited positive work reports from Plaintiff's time at VRS that were contrary to Plaintiff's hearing testimony. (Tr. 27-28).  The ALJ noted that although Plaintiff testified his pain had become worse since his time at VRS, he reported no objective medical evidence in support of his claim. (*Id.*).  Finally, the ALJ  cited testimony from the hearing indicating Plaintiff was adapting to the use of one hand in everyday activities such as living alone, driving, and operating a cellular telephone.  (Tr. 28).

After determining Plaintiff's RFC, the ALJ proceeded with step four of the disability determination and concluded that Plaintiff was unable to return to any of his past relevant work. (Tr. 28).  In the final step of the analysis, step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.   (Tr. 29).   The ALJ's determination was based upon the testimony of the VE. (*Id.*).  Thus, the ALJ ruled Plaintiff was not disabled as defined by the Social Security Act and not entitled to DIB or SSI benefits.  (Tr. 29-30).

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff's brief presents arguments organized into two sections.  The first section alleges the ALJ erred because the evidence presented by Plaintiff established a period of at least twelve-

months of disability. (Pl.'s Mem. at 6-9). The second section of Plaintiff's brief argues that the ALJ erred in determining Plaintiff's RFC. (Pl.'s Mem. at 9-11). The court has scrutinized Plaintiff's brief and identified the following specific contentions in this section: (1) the ALJ's RFC determination was not compliant with Social Security Ruling 96-8p (Pl.'s Mem. at 9); (2) the Commissioner and later the ALJ improperly relied on an RFC generated by a non-M.D. disability specialist (Pl.'s Mem. at 9-10); and (3) the ALJ failed to develop the record by not ordering a consultative examination because no Social Security Medical Source Opinion was available to the ALJ. (Pl.'s Mem 10-11). The court will address each of these arguments in turn.

## IV.   Standard of Review

Judicial review of disability claims under the Social Security Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, "even if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

V.  Discussion

    1.    **The ALJ Committed No Reversible Error in Finding Plaintiff was Not Disabled at Any Time for a Twelve Month Period.**

Plaintiff first argues the ALJ erred in failing to find that a period of disability existed for at least twelve months. Specifically, Plaintiff claims the "medical evidence of record reasonably supports a finding that a threshold period of disability of twelve months was established." (Pl.'s Mem. at 6). Over several pages, Plaintiff's brief outlines the evidence of his pain presented to the ALJ. (Pl.'s Mem. at 6-8). Additionally, Plaintiff asserts that "[t]he ALJ did not bifurcate his findings in any way, finding [Plaintiff] was not disabled from September 2006 through the date of the decision." (Pl.'s Mem. at 8). Plaintiff's argument concludes by noting the ALJ found credibility issues in Plaintiff's pain testimony, but did not entertain the possibility Plaintiff used marijuana for pain relief. (Pl.'s Mem. at 9).

The court notes that Plaintiff cites no authority of any kind in support of this argument. It appears Plaintiff believes this court can review the ALJ's factual determinations *de novo*. It cannot. "This court may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). Furthermore, "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998). The court cannot reconsider the evidence presented at the hearing in the manner Plaintiff asks. To the extent that Plaintiff's brief in this section presents further arguments beyond a reconsideration of the evidence, such arguments are too undeveloped for the court to make any determinations regarding them. Finally, and most importantly, the ALJ's findings challenged (albeit in a perfunctory manner) here are supported

by substantial evidence. Thus, this court determines the ALJ committed no reversible error in concluding that no twelve-month period of disability existed.

### 2. The ALJ's Residual Functional Capacity (RFC) Determination was Proper and Supported by Substantial Evidence.

Plaintiff's brief makes several arguments and assertions concerning the ALJ's RFC determination. The court has grouped these into three subsections in order to address them in a more structured manner.

#### A. Plaintiff Has Failed to Show the ALJ's RFC Determination was Not Compliant with Social Security Ruling 96-8p.

Plaintiff makes the following argument regarding the ALJ's RFC determination:

> [The ALJ's RFC] is merely a circular, conclusory statement that does not constitute an RFC and is not compliant with the specificity requirements of [Social Security Ruling] 96-8p. It did not include any limitations in vocation terms and failed to take account of the effect of [Plaintiff's] pain due to be addressed by the virtue of its inclusion as a severe impairment. It does not even agree with the hypothetical presented to the VE who was left to gapfill for the ALJ in this regard.

(Pl.'s Mem. at 9). Again, Plaintiff raises arguments "in a perfunctory manner, without supporting arguments and citation to authorities." *McClain of Georgia, Inc.*, 138 F.3d at 1422. While Plaintiff cites to SSR 96-8p[1], his brief contains no references to specific provisions of the ruling beyond what is outlined above. Plaintiff's assertion that the ALJ's failure to include "limitations in vocational terms" is too underdeveloped for the court to make a determination regarding its merits. Furthermore, while Plaintiff's argument cites to the hypothetical presented to the VE, the hypothetical is solely an issue for step five in the Social Security process. It has

---

[1] Social Security Rulings, such as SSR 99-8p, are published on authority of the Commissioner and are binding on all components of the administrative process. *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n. 9 (1990)). As the Eleventh Circuit has noted, "[e]ven though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Id.* (citation omitted).

no bearing on the ALJ's RFC determination and is thus not relevant as to this argument. *See Phillips*, 357 F.3d at 1240.

With respect to Plaintiff's assertion that the ALJ "failed to take account of the effect of pain due to be addressed by the virtue of its inclusion as a severe impairment," the court notes the ALJ is not necessarily required to limit the claimant's RFC simply because the claimant's impairments were found to be severe in step two. Rather, the RFC is an assessment of a claimant's ability to work in consideration of his impairments, including those that are severe and not severe. *See* 20 C.F.R. § 404.1545. Evaluating Plaintiff's RFC, the ALJ determined that Plaintiff's medically determinable impairment could reasonably be expected to cause his alleged phantom pain. (Tr. 26). *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). However, the ALJ found Plaintiff's allegations concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with his RFC. (Tr. 26).

In this jurisdiction, "[i]f the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted). Complying with this requirement, the ALJ thoroughly reviewed Plaintiff's medical records, testimony at the hearing, and other evidence presented and stated explicit and adequate reasons for discrediting Plaintiff's allegation.

Specifically, the ALJ cited Plaintiff's failure, on multiple occasions, to comply with taking medications prescribed for pain as evidence belying the severity and chronicity of his alleged pain. (Tr. 26-27). In response to Plaintiff's assertion at the hearing that he could not afford at least one of his medications, the ALJ noted Plaintiff had the resources to purchase

marijuana and cigarettes, suggesting a lack of credibility with respect to this assertion. (Tr. 28). The ALJ noted that at a March 2007 visit to the Cooper Green Mercy Hospital pain clinic, Plaintiff endorsed a pain level of 10 out of 10 pain, but his physician noted he was smiling, appeared not to be in distress, and had a normal weight and blood pressure. (Tr. 27). The ALJ also discussed that while Plaintiff testified at the hearing that he had to miss days at VRS due to pain, and that his pain was constantly requiring rest periods at VRS, the documentation provided by VRS noted attendance was one of Plaintiff's strengths and nothing in his VRS reports indicated Plaintiff required accommodations for rest. (*Id.*). Additionally, although Plaintiff testified that his pain became considerably worse after completing VRS, the ALJ cited a report from Cooper Green Hospital two months after Plaintiff left VRS indicating he endorsed a pain level of 0 out of 10 pain. (Tr. 27-28). The ALJ noted that between Plaintiff's March 27, 2008 visit to Cooper Green and the hearing on November 19, 2008, Plaintiff produced no objective evidence collaborating his allegation of worsened pain. (Tr. 28).

In sum, much of Plaintiff's assertions in this argument are either irrelevant or too underdeveloped for the court to make any determination regarding their merits. Furthermore, Plaintiff fails to show the ALJ did not properly address his allegations of pain. The ALJ found Plaintiff's pain allegations were not credible, and provided explicit and more than adequate reasoning for this determination. Thus, Plaintiff's argument that the ALJ's decision was not compliant with SSR 96-8p is without merit.

> **B.     No Improper Weight at Any Level was Given to a Non-Medical Source Opinion.**

Plaintiff next contends that "[t]he ALJ did not state what weight was given to any medical opinion and did not even report any State Agency assessment." (Pl.'s Mem. at 9).

Plaintiff notes that his initial RFC assessment was performed by a non-medical disability specialist, Felecia Haynesworth, without any Medical Source Opinion ("MSO"). (*Id.*). Plaintiff argues that the only time a non-medical examiner may make a disability determination is when "there is no medical evidence to examine and the individual refuses to attend a consultative examination." (Pl.'s Mem. at 10). In support of this argument, Plaintiff cites 20 C.F.R. § 404.1615(c)(1) and (2), which state, "Disability determinations will be made by: (1) A State agency medical or psychological consultant and a State agency disability examiner; (2) A State agency disability examiner alone when there is no medical evidence to be evaluated." Plaintiff further argues that because Ms. Haynesworth's report was not a MSO, it was not entitled to be given any weight by the ALJ. While the ALJ's opinion does not mention Ms. Haynesworth's report, Plaintiff contends that the resemblance between the ALJ's opinion and Ms. Haynesworth's report indicates reliance.[2] (Pl.'s Mem. at 10).

To the extent Plaintiff argues that the ALJ must explicitly state how much weight he gives to each piece of evidence used in his consideration, that argument is wide of the mark — there is no such requirement. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (noting that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable. . . this court to conclude that the ALJ considered her medical condition as a whole.")

---

[2]The court notes that Plaintiff's brief states Ms. Haynesworth's report was "not from an acceptable medical source and is entitled to no weight." (Pl's Mem. at 10). In the next sentence, Plaintiff states the ALJ's RFC finding "closely resembles" Ms. Haynesworth's assessment. (*Id.*). Furthermore, in Plaintiff's conclusion, he states "[the ALJ's RFC findings] are not based on an acceptable medical source." (Pl's Mem. at 11-12). However, Plaintiff also states the ALJ's RFC findings were "unilateral," without further explanation. (Pl's Mem. at 10). This lone statement seems to contradict the whole of Plaintiff's argument. Based upon the entirety of Plaintiff's brief, the court has attempted to construe the most logical meaning to Plaintiff's argument but notes this ambiguity. To the extent Plaintiff presents further arguments regarding the "unilateral" nature of the ALJ's decisions, such arguments are too underdeveloped for the court to make a determination regarding their merits and are deemed waived.

(internal citations omitted).  The ALJ must state what weight he gives specific medical evidence when confronting a situation of differing opinions.  *See Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).  However, Plaintiff makes no allegation that the ALJ discounted or discredited any objective medical evidence presented in support of Plaintiff's claim.  His argument is that the ALJ improperly relied on evidence, namely Ms. Haynesworth's report.

Reviewing the record, it appears Ms. Haynesworth was a Single Decision Maker ("SDM").  (*See* Tr. 217-224).  SDMs are part of a test program of the Social Security Administration for making initial disability determinations by non-medical experts.  20 C.F.R. § 404.906(a).  Regarding the SDM test program's effect on 20 C.F.R. § 404.1615, the regulation cited by Plaintiff, this court has recently noted:

> Title 20 C.F.R. § 404.906 states that it will institute these new procedures "[n]otwithstanding any other provision in this part or part 422 of this chapter." 20 C.F.R. § 404.906(a) . . . . Alabama is one of the states in which these modifications are being tested. 71 Fed.Reg. 45,890 (August 10, 2006).  Therefore, the provisions in 20 C.F.R. § 404.906 take precedence over those in 20 C.F.R. § 404.1615 . . . . One of the modifications put into effect by these new regulations is the Single Decision Maker Model.  Under this model, a single decision maker will make the disability determination and may also determine if other conditions for entitlement to benefits based on disability are met.  Under this plan, a signature from a medical or psychological consultant is not required on disability determination forms.  20 C.F.R. § 404.906 (2007).

*Wilson v. Astrue*, 2012 WL 3628679, at *7 (N.D. Ala. Aug. 16, 2012).  Thus, any suggestion that Plaintiff's RFC assessment at the state agency level was inappropriate is without merit.

Regarding Plaintiff's assertion that the ALJ was not entitled to give any weight to the SDM's report, the court again notes that Plaintiff fails to cite any authority in support of this proposition.  Assuming, *arguendo*, that Plaintiff's legal interpretation is correct and the ALJ was

not entitled to give any weight to the SDM's report, his argument still fails because it is speculative. Plaintiff presents no evidence that the ALJ relied on the SDM's report. Rather, Plaintiff merely notes that the ALJ's RFC assessment "closely resembles" the SDM's report and invites the court to guess as to the inner thoughts of the ALJ. Such speculation lies beyond this court's scope of review, which is confined to whether the ALJ's decision applies the proper legal standards and is supported by substantial evidence. *Wilson*, 284 F.3d at 1221. In sum, Plaintiff fails to show the Commissioner, at any level, improperly relied on the SDM's report.

### C. The ALJ Did Not Fail to Develop the Record.

Finally, Plaintiff claims the ALJ failed to developed the record because no MSO was available to the ALJ when making his RFC determination. Plaintiff acknowledges that there is no specific requirement for a MSO, but contends the ALJ has the option of ordering a consultative examination and, in this situation, should have taken advantage of this option in order to comply with his duty to fully develop the record.

In support of his argument, Plaintiff claims the ALJ should have ordered a consultative medical examination based upon 20 C.F.R. § 404.1519a(b), which states in relevant part:

> **Situations requiring a consultative examination.** A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination:
> …
> (5) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

As the courts have often noted, "[b]ecause a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *E.g., Graham v.*

*Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  However, Plaintiff's argument is even more problematic in that it takes 20 C.F.R. § 404.1519a(b) out of context and fails to appreciate his burden of proving a disability.

While 20 C.F.R. § 404.1519a(b) appears to support Plaintiff's argument, Plaintiff fails to cite 20 C.F.R. § 404.1519a(a), which indicates the scope of the provision.  Specifically, the section (a) states, "If we cannot get the information we need from your medical sources, we *may* decide to purchase a consultative examination."  20 C.F.R. § 404.1519a(a) (emphasis added).  Section (a) goes on to state, "*Before purchasing* a consultative examination, *we will* consider not only existing medical reports, but also the disability interview form containing your allegations as well as other pertinent evidence in your file."  (Emphasis added).  Furthermore, the language in Section 404.1519a(b), cited by Plaintiff, also uses the term "may" instead of "shall", indicating the ALJ has discretion in exercising this authority.  As the Eleventh Circuit has noted:

> The ALJ may ask the claimant to attend a consultative examination at the Commissioner's expense, but only after the Commissioner (through the ALJ) has given "full consideration to whether the additional information needed ... is readily available from the records of [the claimant's] medical sources." 20 C.F.R. § 404.1519a(a)(1). The regulations "normally require" a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources. 20 C.F.R. § 404.1519a(b).

*Doughty v. Apfel*, 245 F.3d 1274, 1280-81 (11th Cir. 2001).  While "[t]he administrative law judge has a duty to develop the record where appropriate . . . [he] is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d

1253, 1269 (11th Cir. 2007). Consultative examinations are appropriate in certain situations to help the ALJ make an "informed decision" about a claimant's medical condition. *Id.*

As previously discussed, the record contained extensive medical records from Plaintiff's accident and initial surgery, through his discharge from the Cooper Green pain clinic. To the extent Plaintiff argues that the ALJ should have ordered a consultative exam based upon his testimony of a recent increase in his pain, the court notes that Plaintiff failed to carry his burden of proving disability by presenting objective medical evidence in support of this claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Based upon the evidence presented by Plaintiff in support of his claim, the record was sufficient for the ALJ to make an informed decision regarding Plaintiff's condition. Thus, Plaintiff fails to show the ALJ did not fully develop the record by not ordering a consultative examination.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff was not disabled during the period insured is supported by substantial evidence, and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___31st___ day of October, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE